**KREHER & TRAPANI, LLP**
Francesco P. Trapani, Esq.
NJ Bar No.: 2978-2008
frank@krehertrapani.com
Peter J. Kreher, Esq. (*Pro Hac Vice pending*)
pete@krehertrapani.com
1325 Spruce St.
Philadelphia, PA 19107
Phone: (215) 907-7290
Fax: (215) 907-7287

**PODHURST ORSECK, P.A.**
Roy K. Altman, Esq.
raltman@podhurst.com
One SE 3rd Avenue, Suite 2700
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
*Pro Hac Vice pending*

**POGUST BRASLOW & MILLROOD, LLC**
Andrew J. Sciolla, Esq.
NJ Bar No.: 1889-2006
asciolla@pbmattorneys.com
Eight Tower Bridge, Suite 940
161 Washington Street
Conshohocken, PA 19428
Phone: (610) 941-4204
Fax: (610) 941-4245

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

| | | |
|---|---|---|
| **MATTHEW MARTINO, THOMAS WILSON, TERESA GARELLA, MARY BLUE, RYAN BROWN, BRIAN MAYTUM, LEIGH GLASBAND and NICK PANOPOULOS, on behalf of themselves and all others similarly situated,** | : : : : : : : : : : | **Document Electronically Filed** **Civil Action No. _____** **CLASS ACTION COMPLAINT** |
| **Plaintiffs,** | : : | |
| **v.** | : : | |
| **VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AG,** | : : : : | |
| **Defendants.** | : : | |

_____:

## CLASS ACTION COMPLAINT

The Plaintiffs – Matthew Martino who resides in Berkley Heights, New Jersey, Thomas Wilson who resides in Cypress, Texas,  Leigh Glasband who resides in Loganville, Georgia, Teresa Garella who resides in Pittsburgh, Pennsylvania, Mary Blue who resides in Florissant, Missouri, Ryan Brown who resides in Knightdale, North Carolina, Nick Panopoulos who resides in Warren, Ohio, and Brian Maytum who resides in Elk Grove, California – on behalf of themselves and all others similarly situated, bring this action against Defendants Volkswagen Group of America, Inc., whose principal place of business is located at  2200 Ferdinand Porsche Drive, Herndon, VA 20171 and Volkswagen AG whose principal place of business is located in Wolfsburg, Germany, and allege as follows:

## NATURE OF THE CLAIMS

1.      People trust and rely on manufacturers of motor vehicles and of critical safety devices to make safe products that do not give rise to a clear danger of death or personal injury. The alignment and suspension systems of motor vehicles are critical safety features.

2.      A motor vehicle's alignment, sometimes referred to as breaking or tracking, consists of adjusting the angles of wheels so that they are parallel to each other and perpendicular to the ground. The purpose of a proper alignment is to reduce tire wear, and to ensure that the vehicle drives evenly (without pulling to one side). A motor vehicle's suspension is the system of tires, tire air, springs, shock absorbers and struts that connect a vehicle to its wheels. The job of the suspension system is to maximize the friction between the tires and the road surface, to provide steering stability with good handling and to ensure the comfort of the passengers. One of the ways that it does this is by absorbing the energy from road bumps without causing the vehicle to oscillate. An improper or defective suspension system will cause a vehicle's tires to wear unevenly.

2

3.      A vehicle's manufacturer must take all necessary steps to ensure that its products—the safety of which can mean the difference between life and death—function as designed, specified, promised, manufactured, and intended.

4.      This Action is brought on behalf of a nationwide class of owners or lessees ("Class Members"), and state-specific Sub-Classes, of Volkswagen CC model vehicles who leased or purchased Volkswagen CC model vehicles (the "Class Vehicles").

5.      The Defendants, Volkswagen Group of America, Inc. and Volkswagen AG ("the Defendants" or "Volkswagen"), designed, manufactured, tested, warranted, distributed, and sold the defective Volkswagen CC model vehicles from 2010 to the present.

6.      All of the Class Vehicles at issue in this litigation share a common, uniform defect: faulty suspensions, shocks, and struts, which cause rapid and uneven wear and premature degradation of the vehicle's tires—an effect often referred to as "Tire Cupping."[1]

7.      The Defendants have known about the Alignment Defect for years. Thus far, however, the Defendants have offered no remedy to correct the Alignment Defect, except to recommend the replacement of the Class Vehicles' tires with new tires—at the owners' expense.

8.      But, because the Alignment Defect derives from a defect in the Class Vehicles' suspensions, shocks, and struts, it cannot be corrected by simply replacing the Class Vehicles' tires. After all, even new tires will cup[2], degrade, and wear prematurely as a result of the Alignment Defect—thus causing new and prolonged damages to the Class Members.

---

[1] The Class Vehicles' defect shall be referred to herein as the "Alignment Defect."

[2] Cupped tires are tires that appear to have little scoops taken out of them. The two main causes of cupping are a defective suspension system or improper alignment.

3

9.      The Alignment Defect, which is un-repairable, is not simply an economic or aesthetic concern. It is also a serious safety hazard. A 2009 study performed by the National Highway Safety Transportation Administration ("NHSTA") showed that tire-related crashes were far more likely when the tire's tread is worn down or degraded—which is precisely the kind of damage the Alignment Defect presents. In fact, the NHTSA study found that tire-related crashes were more likely as a vehicle's tire tread wears, with accident rates at just 2.4% when tires were at full tread depth to 26% when the tire tread was worn out.

10.      Since 2010, the Defendants knew or should have known that the Class Vehicles are defective, that they suffer from the Alignment Defect, and that they are not fit for their intended purpose of providing consumers with safe and reliable transportation. Nevertheless, the Defendants actively concealed this safety defect and failed to disclose it either to the Plaintiffs or to the Class Members.

11.      The Defendants concealed the defect from the public while continuing to advertise its products as safe and reliable, showing a blatant disregard for public welfare and safety. Moreover, the Defendants violated their affirmative duty, imposed under the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), to promptly advise customers about known defects.

12.      The Defendants also failed to warn the Plaintiffs and the Class Members about the Alignment Defect. In fact, even during the Class Vehicles' warranty period, the Defendants refused to correct or pay for the damage caused by the Alignment Defect. In so refusing, the Defendants have conceded that the Alignment Defect cannot be resolved without redesigning the Class Vehicles' suspension systems or implementing certain significant structural changes.

13.    Had the Plaintiffs and the other Class Members known about the Alignment Defect at the time of lease or purchase, they would not have bought or leased the Class Vehicles or, at the very least, they would have paid less for the Class Vehicles.

14.    Prior to leasing or, as the case may be, purchasing the Class Vehicles, the Plaintiffs and the other Class Members did not know that the Class Vehicles suffered from the Alignment Defect and did not contemplate that the tires on the Class Vehicles would have to be replaced repeatedly and well in advance of their expected tread life. Nor were they aware that they would have to continue changing the Class Vehicles' tires repeatedly over the entire life of the vehicles.

15.    As a result of the Alignment Defect, coupled with Volkswagen's omissions and misrepresentations with respect to that defect, the Plaintiffs and the Class Members have suffered an ascertainable loss of money (in the form of extra payments for degraded tires they have had to replace), a significant diminution in the value (including the resale value) of their Class Vehicles, and did not receive the benefit of their bargain.

## THE PARTIES

16.    Matthew Martino is a New Jersey citizen who resides at 20 Rutgers Avenue, Berkley Heights, NJ 07922.

17.    Thomas Wilson is a Texas resident who resides at 7131 Cyress Prairie Dr. Cypress, TX 77433.

18.    Leigh Glasband is a Georgia resident who resides at 1515 Range Heights Ter. Loganville, GA 30052.

19.    Teresa Garella is a Pennsylvania resident who resides at 1243 Snee Dr. Pittsburgh, PA 15236.

20.    Mary Blue is a Missouri resident who resides at 145 Brackleigh Lane Florissant, MO 63031.

21.    Ryan Brown is a North Carolina resident who resides at 105 Zircon Lane Knightdale, NC 27545.

22.    Nick Panopoulos is an Ohio resident who resides at 1813 Westview Drive NE Warren, OH 44483.

23.    Brian Maytum is a California resident who resides at 4866 St. Augustine Dr. Elk Grove, CA 95758.

24.    The Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation with its headquarters and principal place of business in Herndon, Virginia.

25.    The Defendant, Volkswagen AG, is a German corporation and the parent company of Volkswagen Group of America, Inc. Its headquarters and principal place of business are in Wolfsburg, Germany. The two Defendants are herein referred to collectively in this Complaint as "Volkswagen" or "Defendants" unless otherwise specified.

## JURISDICTION AND VENUE

26.    Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from the Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

27.    This Court has personal jurisdiction over the Plaintiffs because the Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Volkswagen because it is incorporated in and conducts substantial business in this District. Additionally, some of the conduct giving rise to the Complaint took place in this District, and some of the Plaintiffs' claims

arise out of the Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, committing a tortious act in this state, and causing injury to property in this state arising out of the Defendants' acts and omissions outside this state; and at or about the time of such injuries, Volkswagen was engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Volkswagen anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to Class Members residing in this District, and the Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

29.     The Plaintiffs bring this Action on behalf of themselves and a class of similarly-situated consumers who have purchased or leased Class Vehicles with the Alignment Defect.[3] The Alignment Defect endangers the lives of the Class Vehicles' occupants and other drivers, imposes substantial costs and inconvenience on vehicle owners and lessees who must repeatedly replace the Vehicles' tires, and negatively affects the resale value of the Class Vehicles.

30.     **Matthew Martino (New Jersey)**: On or about June 22, 2012, Matthew Martino leased a brand-new 2013 Volkswagen CC Sport from a certified Volkswagen car dealership located at 118 Morristown Road, Bernardsville, NJ 07924. Since the start of his lease, Mr. Martino has had to replace all four (4) of his vehicle's tires on at least four (4) separate occasions because

---

[3] The Class is defined below at paragraphs 53-54.

of the Alignment Defect. Each tire replacement cost Mr. Martino approximately $800-$1000 with alignment and balancing. In June 2015, the Mr. Martino attempted to surrender his vehicle to Volkswagen, but Volkswagen refused to accept it. In so refusing, Volkswagen's representatives explained that they would not accept the vehicle because, once again, it needed new tires and wheels.

31.    The other named plaintiffs in this lawsuit have all had similar issues to those of Mr. Martino.

32.    **Thomas Wilson (Texas)**: In or about February 2012, Mr. Wilson purchased a brand-new 2012 Volkswagen CC LT from a certified Volkswagen dealership located at 17113 Katy Freeway, Houston, TX 77094. Since purchasing the car, Mr. Wilson has had to replace all four (4) tires of his vehicle on four separate occasions because of the Alignment Defect. Each replacement cost approximately $500-700 with alignment and balancing. Mr. Wilson's vehicle currently has approximately 80,000 miles on it.

33.    **Teresa Garella (Pennsylvania)**: On or about March 24, 2014, Ms. Garella purchased a brand-new 2014 Volkswagen CC from a certified Volkswagen car dealership located at 3694 Washington Rd., McMurray, PA 15317. Ms. Garella had to have all four (4) tires replaced on her vehicle on March 11, 2017 because of the Alignment Defect, at which time her vehicle had only 13,954 miles on it. Ms. Garella replaced her tires at the Volkswagen dealership, where she purchased the car, at a cost of around $700-800 with alignment and balancing. Additionally, she was told by the dealership that all four tires were completely bald and cupped.

34.    **Mary Blue (Missouri)**: In or about April 2014, Ms. Blue purchased a 2012 Volkswagen CC at an Acura dealership in Missouri. The vehicle had approximately 28,000 miles on it at the time of purchase and came equipped with brand new tires. In April 2015, just one year

8

after purchasing the vehicle, Ms. Blue had to have all of the tires on the vehicle replaced due to the Alignment Defect, at a cost of approximately $500-700 with alignment and balancing. The mileage on the vehicle at the time of the tire replacement was 42,000. Again, because of the Alignment Defect, Ms. Blue had to purchase another set of tires for her vehicle on February 17, 2017 at a cost of about $600.00, at which time her vehicle had about 75,000 miles on it.

35.    **Ryan Brown (North Carolina)**: In or about November 2015, Mr. Brown purchased a 2010 Volkswagen CC at an auto dealership located at 2900 N. Main St., Fuquay-Varina, NC 27526. The vehicle had approximately 78,000 miles on it at the time of purchase and came equipped with brand-new tires. Just one year after purchasing the vehicle, in November 2016, Mr. Brown had to have all of the tires on the vehicle replaced due to the Alignment Defect at a cost of $500-700 with alignment and balancing. The mileage on the vehicle at the time of the tire replacement was 91,393.

36.    **Nick Panopoulos (Ohio):** On or about September 14, 2011, Mr. Panopoulos purchased a brand-new 2012 Volkswagen CC Turbo from a certified Volkswagen dealership located at 7850 Market St., Boardman, OH 44512. Mr. Panopoulos' vehicle has approximately 58,000 miles on it. Since the time of his purchase, Mr. Panopoulos has had to have all four (4) tires replaced on his vehicle three (3) times, generally after approximately 15,000 miles each time, due to the Alignment Defect, at a cost of approximately $500-700 each time, with alignment and balancing.

37.    **Brian Maytum (California):** In July 2015, Mr. Maytum purchased a 2014 Volkswagen CC R-Line from a certified Volkswagen dealership located at 9776 W. Stockton Blvd. Suite 2, Elk Grove, CA 95757. The vehicle had approximately 8,000 miles on it at the time of purchase. In or about May 2017, at which time the vehicle had approximately 26,000 miles on it,

Mr. Maytum had to have all four (4) tires replaced due to the Alignment Defect at a total cost of about $800-$1,000 with alignment and balancing.

38.    **Leigh Glasband (Georgia):** Mr. Glasband purchased a used 2013 Volkswagen CC in Lawrenceville, Georgia. The car had approximately 55,000 thousand miles on it when it was purchased, and currently has approximately 70,000 miles on it. Since the time of purchase, in approximately 15,000 miles of driving, Mr. Glasband has had to have all four (4) tires on the vehicle replaced on two (2) occasions because of the Alignment Defect at a cost of $500-700, each time, with alignment and balancing.

39.    The named plaintiffs are not the only victims of the Alignment Defect. Some fifty-thousand (50,000) Americans have purchased or leased the Class Vehicles over the last seven (7) years. Each of these approximately fifty-thousand (50,000) vehicles likewise suffers from the very same Alignment Defect—a defect that has nothing to do with the manner in which the vehicle is driven, the terrain on which the vehicle is taken, or the tires with which the vehicle is equipped.

40.    The long list of complaints posted on the Internet by consumers of the Class Vehicles fully demonstrates that each of the approximately fifty-thousand (50,000) Class Vehicles suffers from an identical Alignment Defect. The complaints also show that the Defendants have long been aware of the existence of the Alignment Defect and to its potential dangers.

41.    The following are but a small representative sample of the many complaints that Class Members have posted on the Internet about the Alignment Defect:

a.    "I have a 2012 VW CC Sport that I had cupping all around at 14000 miles. Contacted VW Customer Care and they went half on a new set of Conti DWS I love the tires but now I have 28500 miles on the vehicle (about 14000 miles on these new tires) and I have the same cupping issue again. The car was aligned prior

to installation of the new rubber. My son has a 2009 VW CC VR6 and he is now

on his second set of Yokohama Avids with cupping issues. *There is definity [sic]*

*something wrong with the design. Shouldn't have to replace the tires every year.*"

(emphasis added).

b.  "Im right there with you, I think its a design flaw too. Ive had this car since new

and road noise has been big issue. Now the tires cupping on top of it, Cmon man!!

This car should ride a lot better than it does especially what I paid for it. My 36000

mile warranty has ran out so the stealership will tell me to take a hike if I complain

again to them."

c.  "I recently bought a CPO 2012 CC Sport with 14k miles on it. Around 17k miles I

had cupping on all four tires. Dealership wouldn't do anything because tires aren't

covered. I spoke with a Service Manager at Continental and he told me that they

have been fighting with VW about this for a while. He said they are trying to get

VW to change the rotation interval to 6k miles instead of the 10k miles they have

in the owner's manual. Conti replaced all four tires as a "one time exception". Now,

about 2k miles later, the problem is back....I have asked VW to take the car back. I

don't think that will ever happen but I want my case well documented. I 'm even

going to look into New Jersey Lemon Law to see if I can take action. To me it

seems like the problem is with the car. I say this because so many people who have

reported this problem and changed tire brands have had the problem again…."

d.  "I have a 2012.VW CC. At 14000 miles I had tire cupping on all four wheels.

(OEM.Conti tires). Replaced tires and aligned. Another 14000 miles later I have

the same problem again. VW sends me to Conti but friends with the same car and

11

different tires have the same problem. Still not fixed. Contacted vw customer service several times and the problem is still not resolved. There is something wrong with the suspension, not the tires. Don't know what else I have to do to make them understand there is a problem with this model car."

e.    "i have replaced all 4 tires 3 times on my cc and it only has 50,000 miles on it. bunch of …."

f.    "Same issue. 2013 VW CC. Gone through 2 sets of tires and the dealer (Cook VW in Bel Air MD) acknowledges it's a problem with the CC suspension. I will NEVER buy another VW I don't care how "good" the deal is."

g.    "I have the same issue with a 2012 CC. The tires are cupping on the inner front tires. I had them rotated and realigned and now the car sounds horrible and the ride is not smooth.
VW told me that is what happens when you rotate the tires. Sorry! I think not. How many people on this site have a 2012 CC with the same issues? If there is an emission problem, there could be an alignment defect as well."

h.    "2011 CC Sport tires are all cupped by 17,000. Tire rotation made the noise worse. Called Continental Tires...nothing. Called VW Care and they act like they never heard of the problem before. Very expensive problem on the care owner. No more VW's."

i.    "I have a 2010 VW CC and I have the same problem that I've read other people are experiencing. I'm currently on my second set of tires and the dealership said that they have no idea what's causing the cupping. I love the car but it's time to get rid of my VW."

j.  "Have a 2009 third set of tires! Still same problem CUPPING. Not buying VW again, I just replaced these tires in Dec 2012, and it is Aug 2013 and the same problem. And yet VW gets away with it. Third Set!"

42.    In addition to complaining publicly about the Alignment Defect, the Class Members, including the Plaintiffs, have, since at least 2012 (if not before), repeatedly reported the Alignment Defect to the Defendants and to their network of authorized dealers.

43.    Despite knowing about the Alignment Defect, the Defendants failed to disclose it either to the Plaintiffs or to any other Class Member.

44.    Instead, Volkswagen has actively concealed the Alignment Defect and has continued to manufacture, distribute, and sell the Class Vehicles with the Alignment Defect.

45.    Moreover, Volkswagen has failed to provide an acceptable service or repair procedure to address the Alignment Defect. Premium vehicles with aggressive suspension settings typically have higher negative camber settings[4], purportedly for better handling performance. Due to the high negative camber settings, the inner portion of the Class Vehicles' tires wear far more rapidly than do tires on other vehicles. The Alignment Defect is identifiable, in part, precisely because the Defendants have designed the Class Vehicles' front suspension with no ability to adjust the front camber on the vehicles or to correct for their being out of specification. The Defendants also do not provide a robust and reliable means by which the Class Vehicles might stay within alignment during normal operation and use.

---

[4] The camber setting is the angle made by the wheels of a vehicle; specifically, it is the angle between the vertical axis of the wheels used for steering and the vertical axis of the vehicle when viewed from the front or rear. It is used in the design of steering and suspension. A negative camber leans both tires on the axle towards the center of the vehicle and causes the inside edges of the tires to wear faster than the outside edges.

46.     The sole cause of the premature "tire cupping" on the Class Vehicles is the Alignment Defect. As of this writing, the Defendants have neglected and refused to remedy the Alignment Defect, despite having knowledge of its existence and its damaging effects.

47.     As a result of the Alignment Defect and the Defendants' efforts to conceal the Alignment Defect, the Plaintiffs and the Class Members have been harmed and have suffered damages. Specifically, the Plaintiffs and the Class Members (1) have been placed (and will continue to be placed) at a significantly increased risk of physical injury or death resulting from a tire-related crash or accident; (2) have incurred (and will continue to incur) substantial out-of-pocket costs relating to the maintenance, repair, and replacement of the prematurely worn and degraded tires; (3) have suffered (and will continue to suffer) a significant diminution in the overall and resale value of their vehicles; and (4) did not receive the benefit of their bargain, as the value of the vehicle as delivered was less than the value of the vehicle as promised.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

48.     Upon information and belief—and as described more fully above—the Defendants have known about the Alignment Defect since at least 2010. But, rather than remedy the Alignment Defect or disclose it to the public, the Defendants have actively concealed the Alignment Defect—and its associated damages and costs—from the public, the Plaintiffs, and the Class Members. More than that, for years, the Defendants did not fully investigate or disclose the seriousness of the Alignment Defect and, in fact, downplayed the widespread prevalence of the problem. Any applicable statute of limitations has therefore been tolled by the Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## Discovery Rule

49.     The causes of action alleged herein did not accrue until the Plaintiffs and the Class Members discovered that their vehicles had the Alignment Defect.

50.     The Plaintiffs and the Class Members, however, had no realistic ability to discern that the Class Vehicles were defective until they learned of the existence of the Alignment Defect. In either event, the Plaintiffs and the Class Members had no reason to discover their causes of action because of the Defendants' active concealment of the true nature of the Alignment Defect.

## Estoppel

51.     The Defendants were, and remain, under a continuing duty to disclose to the Plaintiffs and to the Class Members the true character, quality, and nature of the Class Vehicles. This would include the existence of the Alignment Defect and the extent of the damages the Alignment Defect would cause. Instead, the Defendants actively concealed the true character, quality, and nature of the Class Vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Class Vehicles. The Plaintiffs and the Class Members reasonably relied upon the Defendants' knowing and affirmative misrepresentations and/or active concealment of these facts. Based on the foregoing, the Defendants are estopped from relying on any statute of limitations in defense of this Action.

## CLASS ACTION ALLEGATIONS

52.     The Classes' claims all derive directly from a single course of conduct by the Defendants. This case is about the responsibility of the Defendants, at law and in equity, for their knowledge, their conduct, and their products. The Defendants have engaged in uniform and standardized conduct toward the Classes. The Defendants did not differentiate, in degree of care or candor, in their actions or inactions, or in the content of their statements or omissions, among

individual Class Members. The objective facts on these subjects are the same for all Class Members. Within each Claim for Relief asserted by the Classes, the same legal standards govern. Additionally, many states—and for some claims all states—share the same legal standards and elements of proof, facilitating the certification of multistate or nationwide classes. Accordingly, the Plaintiffs bring this lawsuit as a class action on their own behalf, and on behalf of all other persons similarly situated as members of the proposed Classes, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### The Nationwide Consumer Class

53.     The Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Consumer Class defined as follows:

**All current and former owners or lessees of Class Vehicles.**

### The State Consumer Classes

54.     The Plaintiffs allege statewide class action claims on behalf of classes in the following states: California, Georgia, Missouri, Ohio, New Jersey, North Carolina, and Pennsylvania (each a "Sub-Class State"). Each of these State Consumer Classes is initially defined as follows:

> **All current and former owners or lessees of Class Vehicles who purchased or leased their Class Vehicles in a Sub-Class State.**

55.     The Nationwide Consumer Class, the Statewide Consumer Classes, and their members are sometimes referred to herein as the "Class" or the "Classes."

16

56.    Excluded from each Class are the Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

## **Numerosity and Ascertainability**

57.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). There are tens of thousands of Class Vehicles nationwide, and thousands of Class Vehicles in each of the States. Individual joinder of all Class members is therefore impracticable.

58.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by the Defendants or third parties in the usual course of business and within their control. The Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

## **Predominance of Common Issues**

59.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers and which are the same for each of the respective Classes predominate over questions affecting only individual Class members. These include, without limitation, the following:

a.    whether the Class Vehicles contain the Alignment Defect;

b.    whether the Class Vehicles have suffered a diminution in value as a result of the Alignment Defect;

c.    whether the Alignment Defect constitutes an unreasonable safety risk;

d.  whether the Defendants knew or should have known about the Alignment Defect, and, if so, how long ago the Defendants discovered or should have discovered the Alignment Defect.

e.  whether the Defendants had a duty to disclose the existence of the Alignment Defect to the Plaintiffs and Class Members.

f.  whether the Defendants failed to disclose the existence of the Alignment Defect to the Plaintiffs and Class Members.

g.  whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Class Vehicle;

h.  whether the Defendants' acts and omissions as alleged herein breached its warranty with the Plaintiffs and Class Members.

i.  whether the Plaintiffs and Class Members are entitled to monetary damages as a result of the Defendants' wrongful conduct;

j.  whether the Defendants' concealment of the true defective nature of the Class Vehicles induced the Plaintiffs and Class Members to act to their detriment by purchasing the Class Vehicles;

k.  whether the Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or application of equitable estoppel;

l.  whether the Defendants misrepresented that the Class Vehicles were safe;

m.  whether the Defendants engaged in unfair, deceptive, unlawful, and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Class Vehicles were designed, manufactured, and sold with the Alignment Defect;

n.  whether the Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

o.  whether the Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

p.  whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

q.  whether the Plaintiffs and the Classes are entitled to a declaratory judgment stating that the Alignment in the Class Vehicles is defective and/or not merchantable;

18

    r.   whether the Defendants' unlawful, unfair, and/or deceptive practices harmed the Plaintiffs and the Classes;

    s.   whether the Defendants have been unjustly enriched by its illegal conduct;

    t.   whether the Plaintiffs and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

    u.   whether the Defendants should be declared responsible for notifying all Class Members of the Alignment Defect and ensuring that all vehicles with the Alignment Defect are promptly recalled and repaired;

    v.   what aggregate amounts of statutory penalties are sufficient to punish and deter the Defendants and to vindicate statutory and public policy objectives; and

    w.   how such penalties should be most equitably distributed among Class Members.

### Typicality

60.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3), because the Plaintiffs' claims are typical of the claims of the Class Members and arise from the same course of conduct by the Defendants. The relief the Plaintiffs seek is typical of the relief sought for the other Class Members.

### Adequate Representation

61.    The Plaintiffs will fairly and adequately represent and protect the interests of the Classes. The Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

62.    The Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither the Plaintiffs nor their counsel have interests adverse to those of the Classes.

### Superiority

63.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because the Defendants have acted and refused to act on grounds generally applicable to each Class, thereby

making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

64.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3), because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65.     The common questions of law and of fact regarding the Defendants' conduct and responsibility predominate over any questions affecting only individual Class Members.

66.     Because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, such that most or all Class Members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

67.     The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class Member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

68.     The Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of the Plaintiffs or on its own determination, certify nationwide, statewide, and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

69.     The Classes expressly disclaim any recovery in this action for physical injury resulting from the Alignment Defect without waiving or dismissing such claims. The Plaintiffs are informed and believe that injuries suffered in crashes as a result of the Alignment Defect implicate the Class Vehicles, constitute evidence supporting various claims, including diminution of value, and are continuing to occur because of the Defendants' delays, omissions, fraudulent concealment, and inaction. The increased risk of injury from the Alignment Defect serves as an independent justification for the relief sought by the Plaintiffs and the Classes.

### REALLEGATION AND INCORPORATION BY REFERENCE

70.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs and allegations of this Complaint, including the Nature of Claims, Factual Allegations, Tolling Allegations, and Class Action Allegations, as though fully set forth in each of the following Claims for Relief asserted on behalf of the Nationwide Class and the Statewide Classes.

### CLAIMS FOR RELIEF

I.     **Nationwide Claims**

  A.     **Federal Claims**

## COUNT 1

### Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

71.     The Plaintiffs bring this Count against the Defendants, Volkswagen, on behalf of members of the Nationwide Consumer Class who purchased or leased Class vehicles in the following States: California, Georgia, Missouri, New Jersey, North Carolina, Ohio, Pennsylvania, and Texas.

72.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

73.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

74.     The Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

75.     Volkswagen is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

76.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

77.     Volkswagen provided the Plaintiffs and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Volkswagen warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass

without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

78.    Volkswagen breached these implied warranties, as described in more detail above, and is therefore liable to the Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they are equipped with faulty suspensions, shocks, and struts, amounting to the Alignment Defect.

79.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

80.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Volkswagen, on the one hand, and the Plaintiffs and the Class Members, on the other.

81.    Any limitations on the warranties are substantively unconscionable. Volkswagen knew that the Class Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. Volkswagen failed to disclose the Alignment Defect to the Plaintiffs and the other Class Members. Thus, Volkswagen's enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

82.    Privity is not required here because the Plaintiffs and each of the other Class Members are intended beneficiaries of contracts and, specifically, of their implied warranties, between Volkswagen and its dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally,

privity is also not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defect.

83.     Pursuant to 15 U.S.C. § 2310(e), the Plaintiffs are entitled to bring this class action and are not required to give the Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of the Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

84.     Furthermore, affording Volkswagen an opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Volkswagen knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that the Plaintiffs resort to an informal dispute resolution procedure and/or afford Volkswagen a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

85.     The Plaintiffs and the other Class Members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Volkswagen is refusing to acknowledge any revocation of acceptance and return immediately any payments made, the Plaintiffs and the other Class Members have not re-accepted their Defective Vehicles by retaining them.

86.     The amount in controversy of the Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. The Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by

law, including but not limited to diminution in value of their vehicles and benefit-of-the-bargain damages, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), the Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by the Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

87.    The Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Alignment Defect in their vehicles. Such expenses and losses will continue as the Plaintiffs and Class Members must take time off from work, pay for rental cars or other transportation arrangements, and child care.

88.    The rights of Class members to recover these expenses as an equitable matter to put them in the place they would have been but for Volkswagen's conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by Volkswagen, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

### B.    Common Law and State Law Claims

### COUNT 2

### Fraudulent Concealment

89.    The Plaintiffs bring this claim on behalf of the Nationwide Consumer Class under the common law of fraudulent concealment, as there are no true conflicts (case-dispositive differences) among various states' laws of fraudulent concealment. In the alternative, the Plaintiffs bring this claim under the laws of the states where the Plaintiffs and Class Members reside and/or purchased or leased their Class Vehicles.

90.    Volkswagen concealed and suppressed material facts regarding the Defective Alignment, which causes, among other effects, the vehicles' tires to erode and ultimately malfunction.

91.    Volkswagen took steps to ensure that its employees did not reveal the known Alignment Defect to regulators or consumers.

92.    On information and belief, Volkswagen still has not made full and adequate disclosure, continues to defraud the Class Members, and continues to conceal material information regarding the Alignment Defect that exists because of, among other things, improperly designed and installed suspensions, shocks, and struts.

93.    Volkswagen had a duty to disclose the Alignment Defect because it:

    a.  Had exclusive and/or far superior knowledge and access to the facts than the Plaintiffs and Class Members, and knew the facts were not known to or reasonably discoverable by the Plaintiffs and the Class;

    b.  Intentionally concealed the foregoing from the Plaintiffs; and

    c.  Made incomplete representations about the safety and reliability of the Defective Alignment and, by extension, the Class Vehicles, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

94.    These omitted and concealed facts were material because they would be relied on by a reasonable person purchasing, leasing or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by the Plaintiffs and the other Class Members. Whether a merchant's products are safe and reliable, and whether that merchant stands behind its products, are material concerns to a consumer. The Plaintiffs and Class

Members trusted Volkswagen not to sell or lease them vehicles that were defective or that violated federal law governing motor vehicle safety.

95.     Volkswagen concealed and suppressed these material facts to falsely assure purchasers, lessees, and consumers that its vehicles were capable of performing safely, as represented by Volkswagen and reasonably expected by consumers.

96.     Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and to avoid recalls that would hurt the brand's image and cost Volkswagen money. Volkswagen concealed these facts at the expense of the Plaintiffs and the Class.

97.     The Plaintiffs and the Class were unaware of these omitted material facts, and would not have acted as they did if they had known of the concealed and/or suppressed facts.

98.     Had the Plaintiffs and the Class Members been aware of the Alignment Defect and Volkswagen's callous disregard for safety, the Plaintiffs and the Class either would have paid less for their Class Vehicles or would not have purchased or leased them at all. The Plaintiffs and Class Members did not receive the benefit of their bargain as a result of Volkswagen's fraudulent concealment.

99.     Because of the concealment and/or suppression of the facts, the Plaintiffs and Class Members sustained damage because they own vehicles that diminished in value as a result of Volkswagen's concealment of, and failure to timely disclose, the serious Alignment Defect in thousands of Class Vehicles and the serious safety and quality issues caused by Volkswagen's conduct.

100.     The value of Plaintiffs' and all Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of the Alignment Defect and made any reasonable

consumer reluctant to purchase or lease any of the Class Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

101.    The Plaintiffs and the Class also have incurred (and will continue to incur) substantial out-of-pocket costs relating to the maintenance, repair, and replacement of the prematurely worn and degraded tires, and have suffered benefit-of-the-bargain damages, as the value of Class Vehicles as delivered was less than the value of Class Vehicles as promised.

102.    Accordingly, Volkswagen is liable to the Plaintiffs and the Class for their damages in an amount to be proven at trial.

103.    Volkswagen's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the Plaintiffs' and the Class' rights and well-being, and with the aim of enriching Volkswagen. Volkswagen's conduct, which exhibits the highest degree of reprehensibility, being intentional, continuous, placing others at risk of death and injury, and effecting public safety, warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT 3

### Breach of Implied Warranty

104.    The Plaintiffs bring this claim on behalf of the Nationwide Consumer Class under the common law breach of implied warranty, as there are no true conflicts (case-dispositive differences) among various states' laws for a breach of implied warranty. In the alternative, the Plaintiffs bring this claim under the laws of the states where the Plaintiffs and Class Members reside and/or purchased or leased their Class Vehicles.

105.    Volkswagen is a merchant with respect to motor vehicles.

106.    Under the common law claim of breach of implied warranty, a warranty that the Alignment and Suspension Systems and, by extension, the Class Vehicles, were in merchantable

28

condition was implied by law in the transactions when the Plaintiffs and Class Members purchased or leased their Class Vehicles.

107.    The Class Vehicles, when manufactured, sold, and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and their alignment systems are used, because they are constructed with the Alignment Defect, leading to an unreasonable likelihood of damage to the Class Vehicles and serious bodily injury to the vehicle occupants, proximate motorists, and anyone in the vicinity of the defective Class Vehicles.

108.    Volkswagen was provided notice of the Alignment Defect through its knowledge of the issues, by customer complaints, and by numerous individual letters and communications sent by the consumers. Moreover, Volkswagen was aware of these problems long before the Plaintiffs and the Class and had ample notice and opportunity to correct them.

109.    As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, the Plaintiffs and the Class have been damaged in an amount to be proven at trial.

## COUNT 4

### Unjust Enrichment

110.    The Plaintiffs bring this claim on behalf of the Nationwide Consumer Class under the common law of unjust enrichment, as there are no true conflicts (case-dispositive differences) among the various states' laws of unjust enrichment. In the alternative, the Plaintiffs bring this claim under the laws of the states where the Plaintiffs and the Class Members reside and/or purchased or leased their Class Vehicles.

111.    Volkswagen has received and retained a benefit from the Plaintiffs and the Class Members and inequity has resulted.

112.    Volkswagen benefitted through its unjust conduct by selling vehicles containing a concealed safety-and-reliability related defect, at a profit, for more than these Defective Class Vehicles were worth, to the Plaintiffs and the Class Members, who overpaid for improper alignment and suspension systems by overpaying for their Class Vehicles, and/or would not have purchased or leased these deficiently aligned Class Vehicles at all; and who have been forced to pay other costs.

113.    It is inequitable for Volkswagen to retain these benefits.

114.    The Plaintiffs do not have an adequate remedy at law.

115.    As a result of Volkswagen's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

II.    **State Sub-Class Claims**

A.    **Claims Brought on Behalf of the California Sub-Class**

**COUNT 5**

**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, et seq.**

116.    This claim is brought only on behalf of Brian Maytum and the California Consumer Sub-Class against the Defendants, Volkswagen.

117.    Cal. Bus. & Prof. Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising . . . ." Volkswagen engaged in conduct that violated each of this statute's three prongs.

118.    Volkswagen committed an unlawful business act or practice in violation of § 17200 by its violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq., as set forth above, by the acts and practices set forth in this Complaint.

119.    Volkswagen also violated the unlawful prong because it has engaged in violations of the TREAD Act, 49 U.S.C. §§ 30101, et seq., and its accompanying regulations by failing to promptly notify vehicle owners, purchasers, lessees, dealers, and NHTSA of the defective Class Vehicles and/or the Alignment Defect installed in them, and remedying the Alignment Defect.

120.    Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's responsibility to notify the NHTSA of a motor vehicle defect within five days of determining that a defect in a vehicle has been determined to be safety-related. See 49 C.F.R. § 573.6.

121.    Volkswagen violated the reporting requirements of FMVSS 573 requirement by failing to report the Alignment Defect or any of the other dangers or risks posed by the Alignment Defect within five days of determining the defect existed, and failing to recall all Class Vehicles.

122.    Volkswagen violated the common-law claim of negligent failure to recall, in that Volkswagen knew or should have known that the Class Vehicles and/or the Alignment Defect installed in them were dangerous and/or were likely to be dangerous when used in a reasonably foreseeable manner; Volkswagen became aware of the attendant risks after they were sold; Volkswagen continued to gain information further corroborating the Alignment Defect and dangers posed by it; and Volkswagen failed to recall the Vehicles, which failure was a substantial factor in causing harm to the Plaintiffs and the California Sub-Class, including diminished value and out-of-pocket costs.

123.    Volkswagen committed unfair business acts and practices in violation of § 17200 when it concealed the existence and nature of the Alignment Defect, dangers, and risks posed by the Class Vehicles and/or the Alignment Defect installed in them. Volkswagen represented that

the Class Vehicles and/or the Alignment and Suspension Systems installed in them were reliable and safe when, in fact, they are not.

124.    Volkswagen also violated the unfairness prong of § 17200 by failing to administer a recall of Class Vehicles.

125.    Volkswagen violated the fraudulent prong of § 17200 because the misrepresentations and omissions regarding the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

126.    Volkswagen committed fraudulent business acts and practices in violation of § 17200 when they concealed the existence and nature of the Alignment Defect, dangers, and risks posed by the Class Vehicles and/or the Alignment Defect installed in them, while representing in their marketing, advertising, and other broadly disseminated representations that the Class Vehicles and/or the Alignment Defect installed in them were reliable and safe when, in fact, they are not. Volkswagen's active concealment of the dangers and risks posed by the Class Vehicles and/or the Alignment Defect are likely to mislead the public with regard to their true defective nature.

127.    Volkswagen has violated the unfair prong of § 17200 because of the acts and practices set forth in the Complaint, including the manufacture and sale of Class Vehicles and/or the Alignment Defect installed in them, and Volkswagen's failure to adequately investigate, disclose and remedy, offend established public policy, and because of the harm they cause to consumers greatly outweighs any benefits associated with those practices. Volkswagen's conduct has also impaired competition within the automotive vehicles market and has prevented the

Plaintiffs and the California Class from making fully informed decisions about whether to purchase or lease the defective Class Vehicles and/or the price to be paid to purchase or lease them.

128.    The Plaintiffs and the California Sub-Class have suffered injuries in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. As set forth above, each member of the California Sub-Class, in purchasing or leasing Class Vehicles with the Alignment Defect, relied on the misrepresentations and/or omissions of Volkswagen with respect of the safety and reliability of the vehicles. Had the Plaintiffs and the members of the California Sub-Class known the truth, they would not have purchased or leased their vehicles and/or paid as much for them.

129.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's businesses. Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated.

130.    As a direct and proximate result of Volkswagen's unfair and deceptive practices, the Plaintiffs and the California Sub-Class have suffered and will continue to suffer actual damages.

131.    The Plaintiffs and the California Sub-Class request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203; and for such other relief set forth below.

**COUNT 6**

**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, et seq.**

132.    This claim is brought only on behalf of Brian Maytum and the entire the California Consumer Sub-Class against the Defendants, Volkswagen.

133.    California Bus. & Prof. Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

134.    Volkswagen caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including the Plaintiffs and the entire California Sub-Class.

135.    Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles and/or the Alignment Defect installed in them as set forth in this Complaint were material and likely to deceive a reasonable consumer.

136.    Plaintiff Brian Maytum and the entire California Sub-Class have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, the Plaintiffs and the California Sub-Class relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them. Volkswagen's representations turned out not to be true because the Class Vehicles and/or the Alignment Defect installed in them are inherently defective and dangerous in that the

Alignment Defect causes premature tire wear, irregular driving performance, and a variety of other complications, instead of assisting with steering and operational stability. Had the Plaintiffs and the California Sub-Class known the truth, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, the Plaintiffs and the entire California Sub-Class overpaid for their Class Vehicles and did not receive the benefit of their bargain.

137.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business. Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

138.    The Plaintiffs, individually and on behalf of the other California Sub-Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to the Plaintiffs and the entire California Sub-Class any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT 7

**Violation of the Song-Berverly Consumer Warranty Act for**
**Breach of the Implied Warranty of Merchantability**
**Cal. Civ. Code §§ 1791.1 & 1792**

139.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of Brian Maytum and the entire California Consumer Sub-Class against Volkswagen.

140.    Plaintiff Brian Maytum and the members of the California Sub-Class are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

141.    The Class Vehicles and/or the Alignment Defect installed in them are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

142.    Volkswagen is considered a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

143.    Volkswagen impliedly warranted to the Plaintiffs and the California Sub-Class that the Class Vehicles and/or the Alignment Defect installed in them were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, they do not have the quality that a buyer would reasonably expect, and were therefore not merchantable.

144.    Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

    d.    Pass without objection in the trade under the contract description.

    e.    Are fit for the ordinary purposes for which such goods are used.

    f.    Are adequately contained, packaged, and labeled.

    g.    Conform to the promises or affirmations of fact made on the container or label.

145.    The Class Vehicles and/or the Alignment Defect installed in them would not pass without objection in the automotive trade because the Alignment Defect, among other things, (a) causes uneven and accelerated tire wear; (b) causes vehicles to uncontrollably pull to one side; (c) causes discomfort for vehicle occupants; (d) minimizes friction between tires and the road, jeopardizing steering stability and vehicle performance; (e) allows sudden oscillations in the vehicle when traveling on uneven surfaces; and (f) does not allow for necessary correction and adjustment of the Vehicles' front cambers.

146.    Because of the Alignment Defect, the Class Vehicles are not safe to drive and thus not fit for ordinary purposes of providing reliable, durable, and safe transportation.

147.    The Class Vehicles and/or the Alignment Defect installed in them are not adequately labeled because the labeling fails to disclose the Alignment Defect. Volkswagen failed to warn about the dangerous Alignment Defect in the Class Vehicles.

148.    Volkswagen breached the implied warranty of merchantability by manufacturing and selling the Class Vehicles and/or the Alignment Defect installed in them which, among other things, (a) causes uneven and accelerated tire wear; (b) causes vehicles to uncontrollably pull to one side; (c) causes discomfort for vehicle occupants; (d) minimizes friction between tires and the road, jeopardizing steering stability and vehicle performance; (e) allows sudden oscillations in the vehicle when traveling on uneven surfaces; and (f) does not allow for necessary correction or adjustment of the Vehicles' front cambers.

149.    These Alignment Defects have deprived the Plaintiffs and the California Sub-Class of the benefit of their bargain, and has caused the Class Vehicles to depreciate in value.

150.    The Defendants were on notice by their knowledge of the issues, by customer complaints, and by numerous individual letters and communications sent by the consumers.

151.    As a direct and proximate result of Volkswagen's breach of its duties under California's Lemon Law, the Plaintiffs and the California Sub-Class received goods whose dangerous condition substantially impairs their value. The Plaintiffs and the California Sub-Class have been damaged by the diminished value, malfunctioning, and non-use of their Class Vehicles.

152.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, the Plaintiffs and the California Sub-Class are entitled to damages and other legal and equitable relief including, at their election, the

purchase/lease price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

153.    Pursuant to Cal. Civ. Code § 1794, the Plaintiffs and the California Sub-Class are entitled to costs and attorneys' fees.

**B.    Claims Brought on Behalf of the Georgia Sub-Class**

**COUNT 8**

**Violation of the Georgia Uniform Deceptive Trade Practices Act**
**Ga. Code Ann. §§ 10-1-370, et seq.**

154.    This claim is brought on behalf of Plaintiff Leigh Glasband and the entire Georgia Consumer Sub-Class against the Defendants, Volkswagen.

155.    Plaintiff Glasband, the Georgia Sub-Class, and the Defendants are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

156.    The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a). By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them, Volkswagen engaged in deceptive trade practices prohibited by the Georgia UDTPA.

157.    In the course of their business, Volkswagen failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

158.    Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Alignment Defect installed in them.

159.    Volkswagen and its network of authorized dealers have been aware of the existence of the Alignment Defect and its potential dangers since at least 2012, if not before, by way of numerous public and private complaints about the Alignment Defect and subsequent malfunctions.

160.    By failing to disclose and by actively concealing the Alignment Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as reputable manufacturers that value safety, Volkswagen engaged in unfair or deceptive business practices in violation of the Georgia UDTPA. To ensure that consumers would purchase and/or lease the Class Vehicles, Volkswagen deliberately withheld the information about the propensity of the Alignment Defect to cause premature tire wear, irregular driving performance, and a variety of other complications, instead of addressing the Alignment Defect to ensure the comfort and protection of the consumers and vehicle occupants.

161.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and the serious Alignment Defect discussed above. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles and/or the Alignment Defect installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

162.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable

consumers, including the Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Alignment Defect installed in them, the quality of Volkswagen's brands, and the true value of the Class Vehicles.

163.   Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Alignment Defect installed in them with an intention to mislead the Plaintiffs and the Georgia Sub-Class.

164.   Volkswagen knew or should have known that their conduct violated the Georgia UDTPA.

165.   As alleged above, Volkswagen made material statements about the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them that were either false or misleading.

166.   To protect its profits and to avoid remediation costs and a public relations nightmare, Volkswagen concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them and their costly consequences, and allowed unsuspecting new and used car purchasers and lessees to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

167.   Volkswagen owed the Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them because it:

a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.   Intentionally concealed the foregoing from the Plaintiffs; and/or

c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

168.    Because Volkswagen fraudulently concealed the Alignment Defect in Class Vehicles, resulting in a raft of negative publicity once the Alignment Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

169.    Volkswagen's failures to disclose and active concealment of the dangers and risks posed by the Alignment Defect in Class Vehicles were material to the Plaintiffs and the Georgia Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

170.    Plaintiff Leigh Glasband and the entire Georgia Sub-Class suffered ascertainable loss caused by Volkswagen's misrepresentations and their failure to disclose material information. Had they been aware of the Alignment Defect that existed in the Class Vehicles, and Volkswagen's complete disregard for safety, the Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. The Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

171.    Volkswagen's violations present a continuing risk to the Plaintiff, Georgia Sub-Class members, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

172.    As a direct and proximate result of Volkswagen's violations of the Georgia UDTPA, Plaintiff Leigh Glasband and the entire Georgia Sub-Class have suffered injury-in-fact and/or actual damage.

173.    The Plaintiffs and Sub-Class Members seek an order enjoining Volkswagen's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA per Ga. Code Ann. § 10-1-373.

### C.    Claims Brought on Behalf of the Missouri Sub-Class

### COUNT 9

**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. §§ 407.010 et seq.**

174.    This claim is brought only on behalf of Mary Blue and the Missouri Consumer Sub-Class against the Defendants, Volkswagen.

175.    Plaintiff Mary Blue, the Missouri Sub-Class, and Volkswagen are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

176.    Volkswagen engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

177.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

178.    In the course of its business, Volkswagen failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them as described herein. By failing to disclose the Alignment Defect or facts about the Alignment Defect described herein known to them or that were available to Volkswagen upon reasonable inquiry, Volkswagen deprived consumers of all material facts about the safety and functionality of their vehicle. By failing to release material facts about the Alignment Defect, Volkswagen curtailed or reduced the ability of consumers to take notice of material facts about their vehicle,

and/or it affirmatively operated to hide or keep those facts from consumers. 15 Mo. Code of Serv. Reg. § 60-9.110. Moreover, Volkswagen has otherwise engaged in activities with a tendency or capacity to deceive. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, unfair practices, and/or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Alignment Defect installed in them.

179.    Volkswagen and its network of authorized dealers have been aware of the existence of the Alignment Defect and its potential dangers since at least 2012, if not before, by way of numerous public and private complaints about the Alignment Defect and subsequent malfunctions.

180.    By failing to disclose and by actively concealing the Alignment Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as reputable manufacturers that value safety, Volkswagen engaged in unfair or deceptive business practices in violation of the Missouri MPA. To ensure that consumers would purchase or lease the Class Vehicles, Volkswagen deliberately withheld the information about the propensity of the Alignment Defect to cause premature tire wear, irregular driving performance, and a variety of other complications, instead of addressing the Alignment Defect to ensure the comfort and protection of the consumers and vehicle occupants.

181.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles and/or the Alignment Defect installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

182.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Alignment Defect installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

183.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Alignment Defect installed in them with an intent to mislead the Plaintiffs and the Missouri Sub-Class, including without limitation by failing to disclose the Alignment Defect in light of circumstances under which the omitted facts were necessary in order to correct the assumptions, inferences or representations being made by Volkswagen about the safety or reliability of the Class Vehicles and/or the Alignment Defect installed in them. Consequently, the failure to disclose such facts amounts to misleading statements pursuant to 15 Mo. Code of Serv. Reg. §60-9.090.

184.    Because Volkswagen knew or believed that their statements regarding safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them were not in accord with the facts and/or had no reasonable basis for such statements in light of their knowledge of the Alignment Defect, Volkswagen engaged in fraudulent misrepresentations pursuant to 15 Mo. Code of Serv. Reg.60-9.100.

185.    Volkswagen's conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers whose vehicles were inherently defective and dangerous in that the Alignment Defect: (a) causes tires to prematurely wear; (b) causes uneven wear on tires; (c) causes vehicles to uncontrollably pull to one side; (d)

44

causes discomfort for vehicle occupants; (e) minimizes friction between tires and the road, jeopardizing steering stability and vehicle performance; (f) allows sudden oscillations in the vehicle when traveling on uneven surfaces; and (g) does not allow for necessary correction and adjustment of the Vehicles' front cambers. Such acts are unfair practices in violation of 15 Mo. Code of Serv. Reg. 60-8.020.

186.    Volkswagen knew or should have known that their conduct violated the Missouri MPA.

187.    As alleged above, Volkswagen made material statements about the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them that were either false or misleading.

188.    To protect their profits and to avoid remediation costs and a public relations nightmare, Volkswagen concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them and their costly consequences, and allowed unsuspecting new and used car purchasers and lessees to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

189.    Volkswagen owed the Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them because it:

    a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.   Intentionally concealed the foregoing from the Plaintiffs; and/or

    c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

190.    Because Volkswagen fraudulently concealed the Alignment Defect in the Class Vehicles, resulting in a raft of negative publicity once the Alignment Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

191.    Volkswagen's failures to disclose and active concealment of the dangers and risks posed by the Alignment Defect in Class Vehicles were material to the Plaintiffs and the Missouri Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

192.    Plaintiff Mary Blue and the entire Missouri Sub-Class suffered ascertainable loss caused by Volkswagen's misrepresentations and their failure to disclose material information. Had they been aware of the Alignment Defect that existed in the Class Vehicles, and Volkswagen's complete disregard for safety, the Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. The Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

193.    Volkswagen's violations present a continuing risk to the Plaintiffs, to the Missouri Sub-Class, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

194.    As a direct and proximate result of Volkswagen's violations of the Missouri MPA, Plaintiff Mary Blue and the entire Missouri Sub-Class have suffered injury-in-fact and/or actual damage.

195.     Volkswagen is liable to Plaintiff Mary Blue and the Missouri Sub-Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining the Defendants' unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT 10

### Breach of the Implied Warranty of Merchantability
### Mo. Rev. Stat. § 400.2-314

196.     In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of Mary Blue and the Missouri Consumer Sub-Class against the Defendants, Volkswagen.

197.     Volkswagen is and was at all relevant times a merchant with respect to motor vehicles within the meaning of Mo. Rev. Stat. § 400.2-314(1).

198.     A warranty that the Class Vehicles and/or the Alignment and Suspension Systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to Mo. Rev. Stat. § 400.2-314.

199.     The Class Vehicles and/or the Alignment Defect installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose of providing reliable, durable, and safe transportation. Specifically, they are inherently defective and dangerous in that the Alignment Defect: (a) causes tires to prematurely wear; (b) causes uneven wear on tires; (c) causes vehicles to uncontrollably pull to one side; (d) causes discomfort for vehicle occupants; (e) minimizes friction between tires and the road, jeopardizing steering stability and vehicle performance; (f) allows sudden oscillations in the vehicle when traveling on uneven surfaces; and (g) does not allow for necessary correction and adjustment of the Vehicles' front cambers.

200.    Volkswagen was provided notice of these issues by its knowledge of the issues, by customer complaints, and by numerous individual letters and communications sent by the consumers.

201.    As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff Mary Blue and the entire Missouri Sub-Class have been damaged in an amount to be proven at trial.

### D.    Claims Brought on Behalf of the New Jersey Sub-Class

### COUNT 11

**Breach of Implied Warranty of Merchantability,
N.J. Stat. Ann. § 12a:2-314**

202.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of Matthew Martino and the New Jersey Consumer Sub-Class against the Defendants, Volkswagen.

203.    Volkswagen is a merchant with respect to motor vehicles.

204.    When Plaintiff Matthew Martino and the other members of the New Jersey Sub-Class purchased or leased their Class Vehicles, the transaction contained an implied warranty that the Class Vehicles and/or the Alignment and Suspension Systems installed in them were in merchantable condition.

205.    At the time of sale and all times thereafter, the Class Vehicles and/or the Alignment Defect installed in them were not merchantable and not fit for the ordinary purpose of providing reliable, durable, and safe transportation. Specifically, the Class Vehicles are inherently defective in that they are equipped with the Alignment Defect that, among other things, causes: (a) the Vehicles' tires to prematurely wear; (b) uneven wear on tires; (c) uncontrollable pulling to one side during operation; (d) discomfort for vehicle occupants; (e) minimization of friction between

tires and the road, jeopardizing steering stability and vehicle performance; (f) sudden oscillations in the vehicle when traveling on uneven surfaces; and (g) obstruction to necessary corrections and adjustments of the Vehicles' front cambers.

206.    On information and belief, Volkswagen had notice of the Alignment Defect by its knowledge of the issues, by customer complaints, and by numerous individual letters and communications sent by the consumers.

207.    As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff Matthew Martino and the entire New Jersey Consumer Sub-Class have been damaged in an amount to be proven at trial.

## COUNT 12

**Violation of the New Jersey Consumer Fraud Act,**
**N.J. Stat. Ann. §§ 56:8-1, et seq.**

208.    This claim is brought only on behalf of Matthew Martino and the New Jersey Consumer Sub-Class against the Defendants, Volkswagen.

209.    Plaintiff Matthew Martino, the other New Jersey Sub-Class members, and the Defendants are or were "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

210.    Volkswagen engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

211.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been

49

misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2. Volkswagen engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that the New Jersey Sub-Class members rely upon their acts, concealment, suppression or omissions.

212.    In the course of its business, Volkswagen failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

213.    Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Alignment Defect installed in them.

214.    Volkswagen and its network of authorized dealers have been aware of the existence of the Alignment Defect and its potential dangers since at least 2012, if not before, by way of numerous public and private complaints about the Alignment Defect and subsequent malfunctions.

215.    By failing to disclose and by actively concealing the Alignment Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as reputable manufacturers that value safety, Volkswagen engaged in unfair or deceptive business practices in violation of the New Jersey CFA. To ensure that consumers would purchase and/or lease the Class Vehicles, Volkswagen deliberately withheld the information about the propensity of the Alignment Defect to cause premature tire wear, irregular driving performance, and a variety of other complications, instead of addressing the Alignment Defect to ensure the protection and comfort of the consumers and vehicle occupants.

216.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles and/or the Alignment Defect installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

217.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Alignment Defect installed in them, the quality of the Defendants' brands, and the true value of the Class Vehicles.

218.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Alignment Defect installed in them with an intention to mislead the Plaintiffs and the New Jersey Consumer Sub-Class.

219.    Volkswagen knew or should have known that their conduct violated the New Jersey CFA.

220.    As alleged above, Volkswagen made material statements about the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them that were either false or misleading.

221.    To protect their profits and to avoid remediation costs and a public relations nightmare, Volkswagen concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them and their costly consequences, and allowed unsuspecting new

and used car purchasers and lessees to continue to buy/lease the Class Vehicles, and allowed them to continue driving these highly dangerous vehicles.

222.    Volkswagen owed the Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them because Volkswagen:

    a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.   Intentionally concealed the foregoing from the Plaintiffs; and/or

    c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

223.    Because Volkswagen fraudulently concealed the Alignment Defect in Class Vehicles, resulting in a raft of negative publicity once the Alignment Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

224.    Volkswagen's failures to disclose and active concealment of the dangers and risks posed by the Alignment Defect in Class Vehicles were material to the Plaintiffs and the New Jersey Consumer Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals the Alignment Defect rather than promptly remedies them.

225.    Plaintiff Matthew Martino and the entire New Jersey Sub-Class suffered ascertainable loss caused by Volkswagen's misrepresentations and their failure to disclose material information. Had they been aware of the Alignment Defect that existed in the Class Vehicles, and Volkswagen's complete disregard for safety, the Plaintiffs either would have paid less for their

vehicles or would not have purchased or leased them at all. The Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

226.    Volkswagen's violations present a continuing risk to the Plaintiffs, the New Jersey Sub-Class, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

227.    As a direct and proximate result of Volkswagen's violations of the New Jersey CFA, Plaintiff Matthew Martino and the entire New Jersey Sub-Class have suffered injury-in-fact and/or actual damage.

228.    Plaintiff Matthew Martino and the entire New Jersey Sub-Class are entitled to recover legal and/or equitable relief including an order enjoining Volkswagen's unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

### E.    Claims Brought on Behalf of the North Carolina Sub-Class

### COUNT 13

**Violation of the North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1, et seq.**

229.    This claim is brought only on behalf of Ryan Brown and the North Carolina Consumer Sub-Class against the Defendants, Volkswagen.

230.    Volkswagen engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

231.    The North Carolina Act broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). As alleged above and below, Volkswagen willfully committed unfair or deceptive acts or practices in violation of the North Carolina Act.

232.    In the course of their business, Volkswagen failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

233.    Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Alignment Defect installed in them.

234.    Volkswagen and its network of authorized dealers have been aware of the existence of the Alignment Defect and its potential dangers since at least 2012, if not before, by way of numerous public and private complaints about the Alignment Defect and subsequent malfunctions.

235.    By failing to disclose and by actively concealing the Alignment Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that values safety, Volkswagen engaged in unfair or deceptive business practices in violation of the North Carolina Act. To ensure that consumers would purchase and lease the Class Vehicles, Volkswagen deliberately withheld the information about the propensity of the Alignment Defect to cause premature tire wear, irregular driving performance, and a variety of other complications, instead of addressing the Alignment Defect to ensure the comfort and protection of the consumers and vehicle occupants.

236.    In the course of Volkswagen's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Volkswagen compounded the deception by repeatedly asserting that the Class

Vehicles and/or the Alignment Defect installed in them were safe, reliable, and of high quality, and by claiming to be a reputable manufacturer that values safety.

237.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Alignment Defect installed in them, the quality of Volkswagen's brands, and the true value of the Class Vehicles.

238.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Alignment Defect installed in them with an intention to mislead the Plaintiffs and the North Carolina Sub-Class.

239.    Volkswagen knew or should have known that their conduct violated the North Carolina Act.

240.    As alleged above, Volkswagen made material statements about the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them that were either false or misleading.

241.    To protect their profits and to avoid remediation costs and a public relations nightmare, Volkswagen concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them and their costly consequences, and allowed unsuspecting new and used car purchasers and lessees to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

242.    Volkswagen owed the Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them because it:

a.  Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.  Intentionally concealed the foregoing from the Plaintiffs; and/or

c.  Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

243.  Because Volkswagen fraudulently concealed the Alignment Defect in Class Vehicles, resulting in a raft of negative publicity once the Alignment Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

244.  Volkswagen's failures to disclose and active concealment of the dangers and risks posed by the Alignment Defect in Class Vehicles were material to the Plaintiffs and the North Carolina Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

245.  Plaintiff Ryan Brown and the entire North Carolina Sub-Class suffered ascertainable loss caused by Volkswagen's misrepresentations and their failure to disclose material information. Had they been aware of the Alignment Defect that existed in the Class Vehicles and Volkswagen's complete disregard for safety, the Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. The Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

246.    Volkswagen's violations present a continuing risk to the Plaintiffs, the North Carolina Sub-Class, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

247.    As a direct and proximate result of Volkswagen's violations of the North Carolina Act, Plaintiff Ryan Brown and the entire North Carolina Sub-Class have suffered injury-in-fact and/or actual damage.

248.    Ryan Brown and the North Carolina Sub-Class members seek punitive damages against Volkswagen because Volkswagen's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

249.    Volkswagen fraudulently and willfully misrepresented the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them, deceived North Carolina Sub-Class members on dangerous and material matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting the myriad flaws in the Class Vehicles and/or the Alignment Defect installed in them. Because Volkswagen's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

250.    The Plaintiffs and Sub-Class members seek an order for treble their actual damages, an order enjoining the Defendants' unlawful acts, costs of Court, attorneys' fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

**F.    Claims Brought on Behalf of the Ohio Sub-Class**

**COUNT 14**

**Violation of the Consumer Sales Practices Act**
**Ohio Rev. Code §§ 1345.01, et seq.**

251.    This claim is brought only on behalf of Nick Panopoulos and the Ohio Consumer Sub-Class against Volkswagen.

252.    Plaintiff Nick Panopoulos and the Ohio Sub-Class are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchases and leases of the Class Vehicles with the Alignment Defect installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

253.    Volkswagen is a "supplier" as that term is defined in Ohio Rev. Code § 1345.01(C). The Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. *Id.* Volkswagen's conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

254.    By failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them, Volkswagen engaged in deceptive business practices prohibited by the Ohio CSPA, including: representing that the Class Vehicles and/or the Alignment Defect installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; representing that the subject of a transaction involving them has been supplied in accordance with a previous representation when it has not; and engaging in other unfair or deceptive acts or practices.

255.    Volkswagen's actions as set forth above occurred in the conduct of trade or commerce.

256.    In the course of their business, Volkswagen failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

257.    Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Alignment Defect installed in them.

258.    Volkswagen and its network of authorized dealers have been aware of the existence of the Alignment Defect and its potential dangers since at least 2012, if not before, by way of numerous public and private complaints about the Alignment Defect and subsequent malfunctions.

259.    By failing to disclose and by actively concealing the Alignment Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that values safety, Volkswagen engaged in unfair or deceptive business practices in violation of the Ohio CSPA. To ensure that consumers would purchase and/or lease the Class Vehicles, Volkswagen deliberately withheld the information about the propensity of the Alignment Defect to cause premature tire wear, irregular driving performance, and a variety of other complications, instead of addressing the Alignment Defect to ensure the comfort and protection of the consumers and vehicle occupants.

260.    In the course of Volkswagen's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles and/or the

Alignment Defect installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

261.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Alignment Defect installed in them, the quality of Volkswagen's brands, and the true value of the Class Vehicles.

262.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Alignment Defect installed in them with an intention to mislead the Plaintiffs and the Ohio Sub-Class.

263.    Volkswagen knew or should have known that its conduct violated the Ohio CSPA.

264.    As alleged above, Volkswagen made material statements about the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them that were either false or misleading.

265.    To protect its profits and to avoid remediation costs and a public relations nightmare, Volkswagen concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them and their costly consequences, and allowed unsuspecting new and used car purchasers and lessees to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

266.    Volkswagen owed the Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them because Volkswagen:

a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

b.  Intentionally concealed the foregoing from the Plaintiffs; and/or

c.  Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

267.    Because Volkswagen fraudulently concealed the Alignment Defect in Class Vehicles, resulting in a raft of negative publicity once the Alignment Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

268.    Volkswagen's failure to disclose and active concealment of the dangers and risks posed by the Alignment Defect in Class Vehicles were material to the Plaintiffs and the Ohio Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

269.    Plaintiff Nick Panopoulos and the entire Ohio Sub-Class suffered ascertainable loss caused by Volkswagen's misrepresentations and their failure to disclose material information. Had they been aware of the Alignment Defect that existed in the Class Vehicles, and Volkswagen's complete disregard for safety, the Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. The Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

270.    Volkswagen's violations present a continuing risk to the Plaintiffs, the Ohio Sub-Class, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

271.    As a direct and proximate result of Volkswagen's violations of the Ohio CSPA, Plaintiff Nick Panopoulos and the entire Ohio Sub-Class have suffered injury-in-fact and/or actual damage.

272.    Ohio Sub-Class members seek punitive damages against Volkswagen because their conduct was egregious. Volkswagen misrepresented the safety and reliability of several thousand Class Vehicles and/or the Alignment Defect installed in them, concealed the Alignment Defect in several thousand of them, deceived the Ohio Sub-Class on material matters, and concealed material facts that only Volkswagen knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in several thousand Class Vehicles and/or the Alignment Defect installed in them. Volkswagen's egregious conduct warrants punitive damages.

273.    As a result of the foregoing wrongful conduct of Volkswagen, Plaintiff Nick Panopoulos and the entire Ohio Sub-Class have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Volkswagen's deceptive and unfair conduct, treble damages, court costs and reasonable attorneys' fees, pursuant to Ohio Rev. Code § 1345.09, et seq.

### G.    Claims Brought on Behalf of the Pennsylvania Sub-Class

### COUNT 15

**Violation of the Unfair Trade Practices and Consumer Protection Law**
**Pa. Stat. Ann. §§ 201-1, et seq.**

274.    This claim is brought only on behalf of Teresa Garella and the Pennsylvania Consumer Sub-Class against the Defendants, Volkswagen.

275.    The Plaintiffs purchased or leased their Class Vehicles containing the Alignment Defect primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

276. All of the acts complained of herein were perpetrated by Volkswagen in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

277. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have … characteristics, … Benefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

278. Volkswagen engaged in unlawful trade practices, including representing that Class Vehicles and/or the Alignment Defect installed in them have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard and quality when they are not; advertising them with the intent not to sell or lease them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

279. In the course of their business, Volkswagen failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

280. Volkswagen also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles and/or the Alignment Defect installed in them.

281.    Volkswagen and its network of authorized dealers have been aware of the existence of the Alignment Defect and its potential dangers since at least 2012, if not before, by way of numerous public and private complaints about the Alignment Defect and subsequent malfunctions.

282.    By failing to disclose and by actively concealing the Alignment Defect in the Class Vehicles, by marketing the Class Vehicles as safe, reliable, and of high quality, and by presenting itself as reputable manufacturers that value safety, Volkswagen engaged in unfair or deceptive business practices in violation of the Pennsylvania CPL. To ensure that consumers would purchase and/or lease the Class Vehicles, Volkswagen deliberately withheld the information about the propensity of the Alignment Defect to cause premature tire wear, irregular driving performance, and a variety of other complications, instead of addressing the Alignment Defect to ensure the protection and comfort of the consumers and vehicle occupants.

283.    In the course of Volkswagen's business, they willfully failed to disclose and actively concealed the dangerous risks posed by the many safety issues and serious defect discussed above. Volkswagen compounded the deception by repeatedly asserting that the Class Vehicles and/or the Alignment Defect installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

284.    Volkswagen's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the Plaintiffs, about the true safety and reliability of Class Vehicles and/or the Alignment Defect installed in them, the quality of Volkswagen's brands, and the true value of the Class Vehicles.

285.    Volkswagen intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Alignment Defect installed in them with an intention to mislead the Plaintiffs and the Pennsylvania Sub-Class.

286.    Volkswagen knew or should have known that their conduct violated the Pennsylvania CPL.

287.    As alleged above, Volkswagen made material statements about the safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them that were either false or misleading.

288.    To protect their profits and to avoid remediation costs and a public relations nightmare, Volkswagen concealed the dangers and risks posed by the Class Vehicles and/or the Alignment Defect installed in them and their costly consequences, and allowed unsuspecting new and used car purchasers and lessees to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

289.    Volkswagen owed the Plaintiffs a duty to disclose the true safety and reliability of the Class Vehicles and/or the Alignment Defect installed in them because Volkswagen:

      a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

      b.    Intentionally concealed the foregoing from the Plaintiffs; and/or

      c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Plaintiffs that contradicted these representations.

290.    Because Volkswagen fraudulently concealed the Alignment Defect in Class Vehicles, resulting in a raft of negative publicity once the Alignment Defect finally began to be disclosed, the value of the Class Vehicles has greatly diminished. In light of the stigma attached

to Class Vehicles by Volkswagen's conduct, they are now worth significantly less than they otherwise would be.

291.    Volkswagen's failure to disclose and active concealment of the dangers and risks posed by the Alignment Defect in Class Vehicles were material to the Plaintiffs and the Pennsylvania Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

292.    Plaintiff Teresa Garella and the entire Pennsylvania Sub-Class suffered ascertainable loss caused by Volkswagen's misrepresentations and their failure to disclose material information. Had they been aware of the Alignment Defect that existed in the Class Vehicles, and Volkswagen's complete disregard for safety, the Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all. The Plaintiffs did not receive the benefit of their bargain as a result of Volkswagen's misconduct.

293.    Volkswagen's violations present a continuing risk to the Plaintiffs, the Pennsylvania Sub-Class, as well as to the general public. Volkswagen's unlawful acts and practices complained of herein affect the public interest.

294.    As a direct and proximate result of Volkswagen's violations of the Pennsylvania CPL, Plaintiff Teresa Garella and the entire Pennsylvania Sub-Class have suffered injury-in-fact and/or actual damage.

295.    Volkswagen is liable to Plaintiff Teresa Garella and the Pennsylvania Sub-Class for treble their actual damages or $100.00, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiff Teresa Garella and the Pennsylvania Sub-Class are also entitled to an

award of punitive damages given that Volkswagen's conduct was malicious, wanton, willful, oppressive, and/or exhibited a reckless indifference to the rights of others.

## COUNT 16

### Breach of the Implied Warranty of Merchantability
### 13 PA. Stat. Ann. §2314

296.    In the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act, this claim is brought only on behalf of Teresa Garella and the Pennsylvania Consumer Sub-Class against the Defendants, Volkswagen.

297.    Volkswagen is and was at all relevant times a merchant with respect to motor vehicles within the meaning of 13 Pa. Stat. Ann. § 2104.

298.    A warranty that the Class Vehicles and/or the Alignment and Suspension Systems installed in them were in merchantable condition was implied by law in Class Vehicle transactions, pursuant to 13 Pa. Stat. Ann. § 2314.

299.    The Class Vehicles and/or the Alignment Defect installed in them, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purposes of providing reliable, durable, and safe transportation. Specifically, they are inherently defective and dangerous in that the Alignment Defect: (a) causes tires to prematurely wear; (b) causes uneven wear on tires; (c) causes vehicles to uncontrollably pull to one side; (d) causes discomfort for vehicle occupants; (e) minimizes friction between tires and the road, jeopardizing steering stability and vehicle performance; (f) allows sudden oscillations in the vehicle when traveling on uneven surfaces; and (g) does not allow for necessary correction and adjustment of the Vehicles' front cambers.

300.    Volkswagen was provided notice of these issues by its knowledge of the issues, by customer complaints, and by numerous individual letters and communications sent by the consumers.

301.    As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff Teresa Garella and the entire Pennsylvania Sub-Class have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

302.    The Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the Defendants, Volkswagen, as follows:

303.    An order certifying the proposed Classes, designating the Plaintiffs as the named representatives of the Classes, designating the undersigned as Class Counsel, and making such further orders for the protection of Class members as the Court deems appropriate, under Fed. R. Civ. P. 23.

304.    A declaration that the Alignment and Suspension Systems in Class Vehicles are defective;

305.    A declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Class Vehicles;

306.    An order enjoining the Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Class Vehicles, and such other injunctive relief that the Court deems just and proper;

307.    An award to Plaintiffs and Class Members of compensatory, exemplary, and punitive remedies and damages and statutory penalties, including interest, in an amount to be proven at trial;

308.    An award to Plaintiffs and Class Members for the return of the purchase or lease prices of the Class Vehicles, with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale, for damages and for reasonable attorney fees;

309.    A declaration that the Defendants must disgorge, for the benefit of the Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, or make full restitution to Plaintiffs and Class Members;

310.    An award of attorneys' fees and costs, as allowed by law;

311.    An award of prejudgment and post judgment interest, as provided by law;

312.    Leave to amend this Complaint to conform to the evidence produced at trial; and

313.    Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs demand a jury trial as to all issues triable by a jury.

## DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Francesco P. Trapani, Esq., Andrew J. Sciolla, Esq., Peter J. Kreher, Esq. and Roy K Altman, Esq. as trial counsel.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Rule of Civil Procedure 11.2, Plaintiffs hereby certify that there is a similar or related action pending in the Southern District of Florida, Miami Division, with a docket number of 17-cv-23033 assigned to the Honorable Robert N. Scola, Jr.


DATED: August 11, 2017


                                    **KREHER & TRAPANI, LLP**

                                    /s/ Francesco P. Trapani
                                    Francesco P. Trapani, Esq.
                                    Bar No.: 2978-2008
                                    frank@krehertrapani.com
                                    Peter J. Kreher, Esq. (*Pro Hac Vice pending*)
                                    pete@krehertrapani.com

1325 Spruce St.
Philadelphia, PA 19107
Phone: (215) 907-7290
Fax: (215) 907-7287

**PODHURST ORSECK, P.A.**

 /s/ Roy K. Altman
Roy K. Altman
raltman@podhurst.com
One SE 3rd Avenue, Suite 2700
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
*Pro Hac Vice* pending

**POGUST BRASLOW & MILLROOD, LLC**

/s/ Andrew J. Sciolla
Andrew J. Sciolla, Esq.
NJ Bar No.: 1889-2006
asciolla@pbmattorneys.com
Eight Tower Bridge, Suite 940
161 Washington Street
Conshohocken, PA 19428
Phone: (610) 941-4204
Fax: (610) 941-4245